# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| **ESTEN T. KIRBY, SR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 4:20-CV-00177-NCC |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Esten T. Kirby, Sr. ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 16) and Defendant has filed a brief in support of the Answer (Doc. 19). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

### I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI on June 26, 2017 (Tr. 188-200). Plaintiff was initially denied on July 27, 2017, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 90-91, 99-100). After a hearing, by decision dated March 29, 2019, the ALJ found Plaintiff not disabled (Tr. 12-28). On December 11, 2019, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021, and has not engaged in substantial gainful activity since October 1, 2016, the alleged onset date (Tr. 17).  The ALJ found Plaintiff has the severe impairments of inflammatory arthritis, right foot tendinitis, and degenerative disc disease of the lumbar and cervical spine, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17-18).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work[1] with the following limitations (Tr. 18-19).  Plaintiff can stoop, kneel, and crouch occasionally but cannot perform work that requires crawling (Tr. 19).  Plaintiff is able to perform work that does not require exposure to sustained and concentrated cold or vibration (*Id.*).  Plaintiff can perform work that does not require the operation of foot or hand controls (*Id.*).  Plaintiff can handle with the dominant left hand frequently (*Id.*).  The ALJ found that Plaintiff does not have any past relevant work but that there are jobs that exist in significant numbers in the national economy Plaintiff can perform including assembly worker, food and beverage order clerk, and a stuffer (Tr. 22-23).  Thus, the ALJ concluded that Plaintiff has not been under a disability from October 1, 2016, through the date of the decision (Tr. 23).

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-

finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's RFC (Doc. 16 at 3). Second, Plaintiff argues that the ALJ failed to fully and fairly develop the record (*Id.* at 5). For the following reasons, the Court finds that Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

### A. RFC

First, Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's RFC (Doc. 16 at 3). RFC is the most a claimant can still do in a work setting despite that claimant's physical or mental limitations. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. § 416.945(a)(1). An ALJ determines a claimant's RFC "based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of her limitations." *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Although the ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence, "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). *See also Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability

5

to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox*, 495 F.3d at 619). "An administrative law judge may not draw upon [his or her] own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

Plaintiff asserts that the ALJ's RFC analysis is internally inconsistent (Doc. 16 at 3). Plaintiff argues that a person who cannot perform work that requires the operation of hand controls, cannot frequently handle objects with the left hand (*Id.*). As indicated above, the ALJ's RFC determination specified that Plaintiff could only frequently handle with his dominant left hand but was not otherwise restricted in the use of his right hand (Tr. 19). The ALJ further limited Plaintiff to work that does not require the operation of foot or hand controls (*Id.*).

The Court finds the RFC findings in this case are not internally inconsistent. While a limitation restricting the use of hand controls in addition to a limitation of only frequent handling with the left hand both involve various physical manipulations of the hands, the two are distinct. The Commissioner defines "handling" as "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands." Social Security Ruling (SSR) 85-15, 1985 WL 56857, *7 (1985). While the Commissioner does not separately define the use of hand controls, its meaning is clarified elsewhere; the use of foot or hand controls involves the pushing or pulling of controls. *See* SSR 83-10, 1983 WL 31251, *5 (1983). The Commissioner defines "frequent" as "occurring from one-third to two-thirds of the time." *See id.* Thus, the ALJ determined that Plaintiff could seize, hold, grasp, turn or work with his left hand one-third to two-thirds of the time but unable to push or pull controls with his hands.

In making this determination, the ALJ conducted a complete review of the medical evidence involving Plaintiff's left wrist and hand. As the ALJ noted, while Plaintiff reported left wrist pain with numbness and tingling in his left hand, the objective evidence did not support

limitations beyond that which the ALJ included in his RFC determination (Tr. 20, 483). For example, as the ALJ indicated, x-rays of the hand and wrist in July 2016 did not "show evidence of fracture, deformity, dislocation or degenerative change" (Tr.483). Plaintiff was diagnosed with De Quervain tenosynovitis in his left wrist[2] (Tr. 483). Plaintiff received an injection and was told to modify his activity (Tr. 483-84). Similarly, in January 2017 Plaintiff was found to have a mildly positive Finkelstein's test[3] but no pain with range of motion of left wrist (Tr. 494). X-rays of Plaintiff's left wrist and hand from the same ER visit were unremarkable; "[t]he joints of the left hand are normal. There is no fracture" (Tr. 517). A follow-up MRI of the left wrist from May 2017 found only mild synovitis in the left wrist and first metacarpophalangeal joint with triquetral erosion and mild flexor tensosynovitis (Tr. 531). In May 2017, Plaintiff presented with left wrist pain, numbness and tingling in the left hand (Tr. 536). Upon examination, as noted by the ALJ, Plaintiff had a positive Tinel's and Phalen's signs and some tenderness to palpation over the left upper extremity (Tr. 20, 536). Subsequent EMG testing indicated "no electrodiagnostic evidence of a left median neuropathy at the wrist, cervical radiculopathy, plexopathy or peripheral poly neuropathy" (Tr. 537). Indeed, an EMG from September 2018 similarly found "no electrodiagnostic evidence to support large fiber peripheral polyneuropathy" (Tr. 1099). The record is replete with instances indicating only "minimal" or "mild" tenderness" with no pain with range of motion in the left wrist (Tr. 494, 766). *See, e.g.,* Tr. 546 (noting range of motion within normal limits and no synovitis, erythema, or thrombotic thrombocytopenic purpura (TTP) in his hands, wrists or elbows). The ALJ further noted that Plaintiff's wrist pain

---

[2] De Quervain tenosynovitis is a diagnosed "inflammation of the tendons of the first dorsal compartment of the wrist." Stedman's Medical Dictionary, 902190 (2014).

[3] De Quervain tenosynovitis is diagnosed by use of the Finkelstein test. *Id.*

improved with the pain medication compliance, specifically naproxen and gabapentin (*See, e.g.,* Tr. 740, 765, 1063).  Therefore, the Court concludes that the ALJ's RFC analysis involving Plaintiff's use of his hands is supported by substantial evidence.

To the extent Plaintiff asserts that the ALJ's decision in not supported by substantial evidence because the ALJ failed to properly include that Plaintiff could not handle objects with his non-dominant arm and did not include that limitation in his hypothetical before the vocational expert, the ALJ is not required to include every limitation identified in a medical opinion in his RFC determination and he is only required to include those limitations he finds credible in her hypothetical to the vocational expert.  *Martise*, 641 F.3d at 927 ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.").  As noted by Plaintiff, during the hearing the vocational expert expressed significant confusion regarding the use of Plaintiff's hands (Tr. 55-57).  However, what Plaintiff failed to note was that the parties experienced telephone connection issues that required the parties to hang up and start a new call (Tr. 57-58).  Regardless, the vocational expert clarified that Plaintiff did not have any restrictions on the use of his right hand for handling (Tr. 26-57).  Once the RFC limitations were clarified, the vocational expert identified three representative jobs that Plaintiff could do: assembly work, clerk, food and beverage, and stuffer of small objects (Tr. 57-59).  In fact, when asked if there would be any jobs that a hypothetical person could perform with the additional limitation to only occasional use of the left hand for handling, which is slightly less use that the ALJ determined Plaintiff would be capable of, the vocational expert testified that there were jobs in the national economy he could perform (Tr. 59-60).  The ALJ properly phrased the hypothetical to the vocational expert as a hypothetical need only include impairments that the ALJ finds credible.

8

Thus, the Court finds no error in the ALJ's reliance on the vocational expert's testimony. *Smith v. Colvin*, 756 F.3d 621, 627 (8th Cir. 2014) (finding a hypothetical properly phrased when it only included those impairments that the ALJ found credible).

## B. Fully and Fairly Develop the Record

Second, Plaintiff argues that the ALJ failed to fully and fairly develop the record (Doc. 16 at 5). Specifically, Plaintiff asserts that the ALJ improperly relied on the July 27, 2017 opinion of state agency physician, Dr. Joanne Mace ("Dr. Mace"), and that the record does not contain any medical opinion evidence that supports the RFC finding as of the date of the hearing decision (Doc. 16 at 5-6). To fully and fairly develop the record, Plaintiff argues, the ALJ had a duty to obtain an opinion from a medical professional to interpret the results that post-dated Dr. Mace's opinion in light of the significant medical developments that occurred during that time.

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citations omitted). In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. 20 C.F.R. § 404.1545(a)(3) ("before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary…."). "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work." *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012). However, "this duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). "Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and

9

severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). "Past this point, 'an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'" *Id.* (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Twyford v. Commissioner*, 929 F.3d 512, 517 n.3 (8th Cir. 2019) (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

As a preliminary matter, the Court finds that the ALJ properly evaluated Plaintiff's subjective complaints.[4] *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility

---

[4] Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).  *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 19).  First, the ALJ specifically determined that the "objective evidence does not support the [Plaintiff's] central allegations of debilitating physical impairments" (Tr. 20).  In addition to those records already addressed above regarding Plaintiff's left hand, the ALJ also detailed Plaintiff's medical record as it relates to Plaintiff's right foot tendinitis and degenerative disc disease (Tr. 20-21).  For example, records from the relevant period indicate: full range of motion in Plaintiff's neck (Tr. 494), no midline tenderness in back (Tr. 494), normal strength and tone (Tr. 546), ability to perform double-heel rise (Tr. 763), normal gait (Tr. 339, 1115), and full range of motion (Tr. 1064).  The ALJ also specifically highlighted one instance from January 2019 in which Plaintiff complained of all over pain and that he was unable to perform any activities of daily living due to his pain levels, but the examiner notes and findings were essentially normal with some reduced range of motion in the cervical spine (Tr. 21, 1113-16).  An ALJ may determine that subjective complaints are not credible in light of objective medical evidence to the contrary.  *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).

Second, the ALJ detailed the largely conservative management of Plaintiff's conditions, finding that this evidence does not support including limitations beyond those stated in the RFC determination (Tr. 21).  The ALJ indicated that Plaintiff had not been prescribed a TENS unit or an assistive device for ambulation or undergone epidural steroid injections or nerve blocks (*Id.*).  Further, as noted by the ALJ, Plaintiff has not required hospitalization or been considered a

11

surgical candidate for his back or neck pain (*Id.*).  The ALJ also found Plaintiff's medication management provided him with some relief from his pain (Tr. 21, 740, 765, 1063).  An ALJ may properly consider Plaintiff's conservative treatment history in his determination of a plaintiff's credibility.  *See, e.g., Kamann*, 721 F.3d at 950-51; *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (conservative course of treatment supported ALJ's decision to discredit subjective complaints of pain).

Third, the ALJ noted Plaintiff's noncompliance with treatment.  Specifically, the ALJ indicated that while Plaintiff was referred to physical therapy as well as for shoe inserts for the issues with his right foot and leg, treatment records note that Plaintiff's did not attempt physical therapy or orthotics for pain treatment (Tr. 21, 651, 763).  Indeed, during the hearing, Plaintiff testified that he stopped trying to do prescribed foot exercises (Tr. 41).  The ALJ may consider a failure to follow a course of treatment in determining whether a claimant may receive benefits.  20 C.F.R. §§ 404.1530, 416.930 (individual who fails to follow prescribed treatment without a good reason will not be found disabled).  *See also Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (affirming where ALJ found that claimant's "credibility suffered from his refusal to take pain medication and his refusal to seek out even conservative treatments such as physical therapy"); *Wildman*, 596 F.3d at 966 (noncompliance is a basis for discrediting a claimant; when claimant was compliant with dietary recommendations his pain was under good control; claimant's noncompliance with a diet regimen prescribed by doctor contributed to a negative credibility determination).

Fourth, although the ALJ did not specifically address Plaintiff's activities of daily living as it relates to his analysis of Plaintiff's subjective complaints of pain, it is clear from the record that the ALJ found Plaintiff's statements regarding his inability to perform any activities of daily

living due to his pain levels not credible.  For example, the ALJ noted that Plaintiff testified that he relies on others to perform his activities of daily living, an inability to walk more than fifteen feet, an inability to tie his shoes due to left hand problems, and an inability to stand longer than ten to fifteen minutes due to right foot problems (Tr. 19).  The ALJ contrasted this severe indicia of limitation by indicating in the next sentence, "the undersigned notes the claimant reported that he lives alone and is able to prepare his own simple meals" (Tr. 19).  As previously addressed, Plaintiff has also reported severe pain such that he was unable to perform any activities of daily living.  In that instance, the provider indicated "No red flags other than self-reported pain levels and reduced [range of motion]" (Tr. 1116).  When a claimant overemphasizes or exaggerates symptoms, an ALJ may discount his or her subjective claims.  *See Crawford v. Colvin*, 809 F.3d 404, 410 (8th Cir. 2015) (an ALJ may disbelieve claimant's subjective reports due to "inherent inconsistencies or other circumstances" in the record); *Baker v. Barnhart*, 457 F.3d 882, 892-93 (8th Cir. 2006) (holding that the ALJ properly discounted the claimant's complaints of pain upon considering reports that the claimant exaggerated his symptoms during an examination).  Thus, the Court finds that the ALJ's evaluation of Plaintiff's subjective complaints to be based on substantial evidence and consistent with Regulations and case law.

      Next, the ALJ properly evaluated the medical opinion evidence of record.  First, the ALJ properly evaluated the opinion of Dr. Mace, a state agency medical consultant (Tr. 21-22).  In her July 27, 2017 Physical Residual Functional Capacity Assessment, Dr. Mace opined that Plaintiff could occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday (Tr. 71).  Dr. Mace further indicated that Plaintiff was limited in his ability to push and/or pull with his left upper extremity (*Id.*).  She also found Plaintiff can only occasionally

13

climb ramps and stairs, climb ladders, ropes and scaffolds, stoop, kneel, and crouch, and can never crawl (Tr. 72).  Dr. Mace limited Plaintiff's ability to reach in any direction specifically as it relates to his left side, finding he would be limited in left front, lateral, or overhead movement (*Id.*).  Dr. Mace noted that Plaintiff was also limited on his left side as to "[h]andling (gross manipulation)" (*Id.*).  The ALJ found Dr. Mace's July 2017 findings "persuasive" as "they are consistent with and supported by the record as a whole, including the additional medical evidence received at the hearing level" (Tr. 21).  In support of this assessment, the ALJ again noted the largely normal neurological and physical examination findings throughout the period as addressed in significant detail above.  An ALJ may properly consider the consistency of the opinion with evidence from other medical sources and nonmedical sources in the claim to determine the persuasiveness of the medical opinion.  20 C.F.R. § 404.1520c(c)(2).

Second, the ALJ properly reviewed the opinions of Kristen Richardson, NP ("Ms. Richardson"), a nurse practitioner (Tr. 21).  Ms. Richardson submitted two medical assessments for social security disability claims in September 2018 and December 2018 (Tr. 734-35, 1054-55).  In the first of the two opinions, Ms. Richardson indicated that Plaintiff suffered from joint pain and inflammatory arthritis and that Plaintiff would be able to do sedentary work (Tr. 734).  Ms. Richardson noted that Plaintiff would be limited from doing any sustained lifting and carrying, would not be able to stand or walk more than 2 hours in an 8-hour work day, could sit 6 hours in an 8-hour workday, had occasional pain, would require normal breaks, and did not have any limitations on the use of his upper extremities (Tr. 734-35).  After being asked to redo the form by Plaintiff's counsel as she failed to include any limitations regarding the upper extremities, Ms. Richardson completed a second assessment in December 2018 (Tr. 34, 1054-55).  In the second opinion, Ms. Richardson changed several of her answers, now finding that

Plaintiff could stand at least 6 hours in an 8-hour workday, no limitation on sitting but Plaintiff would need to alternate between sitting and standing every 60 minutes to relieve pain or discomfort, Plaintiff has frequent pain, and would require more than 2 hours of breaks each day (Tr. 1055).  Of note, Ms. Richardson updated her opinion to indicate that Plaintiff could not frequently, with either his right or left sides, reach, push or pull, engage in gross manipulation, handle, finger or feel (Tr. 1055).  The ALJ found Ms. Richardson's opinions not persuasive (Tr. 21).  In doing so, the ALJ noted that in the first opinion, Ms. Richardson opined as to issues reserved to the Commissioner, including the level of Plaintiff's functional exertional level (*Id.*).  *See Davidson v. Astrue*, 578 F.3d 838, 841 (8th Cir. 2009) (issue of disability reserved for Commissioner).  The ALJ also noted the inconsistencies between the opinions and their inconsistency with Ms. Richardson's own treatment records and the record as a whole.  For example, as noted by the ALJ, Ms. Richardson's own treatment records and examination findings routinely noted normal range of motion and that Plaintiff's hands, writs and elbows were without synovitis, erythema, or tenderness to palpation (Tr. 741, 1057, 1109).  *See Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (internal quotation marks omitted) ("Physician opinions that are internally inconsistent are entitled to less deference than they would receive in the absence of inconsistencies."); *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (finding an ALJ may afford an opinion less weight if it is "inconsistent with or contrary to the medical evidence as a whole").

       Plaintiff nevertheless asserts that the ALJ failed to develop the record fully and fairly because the record does not contain any medical opinion evidence that supports the RFC finding as the date of the hearing decision (Doc. 16 at 5-6).  The Court finds that the ALJ's RFC determination is supported by substantial evidence.  A consultative examination is not warranted

when, as is the case here, the ALJ can properly determine the RFC from the medical evidence provided. *Kamann*, 721 F.3d at 950. In addition to the evaluation of Plaintiff's subjective complaints as addressed in more detail above, the ALJ also reviewed the objective evidence in his RFC analysis including those records post-dating Dr. Mace's opinion regarding Plaintiff's diagnosis of degenerative disk disease, Plaintiff's left hip pain, and Plaintiff's flatfoot. Contrary to Plaintiff's assertion, the ALJ did not "play doctor" in his review of these records or, more specifically as suggested by Plaintiff, the MRI results indicating a labral tear. An October 30, 2017, MRI of Plaintiff's left hip indicated, "[p]ossible nondisplaced anterosuperior left acetabular labral tear" (Tr. 655). As addressed above, the ALJ properly reviewed the opinions of Ms. Richardson which notes the MRI and the largely normal findings during this period including a response to pain medication (Tr. 21, 740, 767). To the extent Plaintiff identifies records that support Plaintiff's allegations to the contrary, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). In conclusion, the Court finds the ALJ's RFC determination to be based on substantial evidence and is consistent with Regulations and case law.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 15th day of March, 2021.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE